**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NANCY DRAGAN,                                      Case No. 1:11-cv-44

       Plaintiff,                                Beckwith, J.
                                                   Bowman, M.J.

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


## REPORT AND RECOMMENDATION

Plaintiff Nancy Dragan filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.   *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.   As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff applied for Disability Insurance Benefits ("DIB") in December 2006, and alleges disability due to neck, arm, back and leg pain, numbness in her hands, headaches, fibromyalgia, and dizziness, with an onset date in December 2005 (Tr. 33-34, 116).  After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge  ("ALJ").   An evidentiary hearing was held on August 25, 2009, at which Plaintiff was represented by counsel.   At the hearing, Administrative Law Judge ("ALJ") Donald A. Becher heard

testimony from Plaintiff, and from Janet Chapman, an impartial vocational expert. On September 23, 2009, the ALJ denied Plaintiff's application in a written decision that concluded that Plaintiff was not disabled.

The record on which the ALJ's decision was based reflects that Plaintiff was born in 1966, has a high school education, and was employed as a mail handler with the United States Postal Service until December 30, 2005. (Tr. 25-26, 117). Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "cervical sprain, degenerative disease of the cervical spine, and cervical spondylosis." (Tr. 12). In addition to Plaintiff's severe impairments, the ALJ noted that Plaintiff had complaints of lightheadedness, dizziness, and fibromyalgia, but that none of those conditions were "medically determinable." (Tr. 14). The ALJ referenced Plaintiff's low back pain, but did not classify it as severe. Likewise, although the record included a history of hand surgery and related complaints, the ALJ concluded that Plaintiff's "history of hand surgery is non-severe because she was able to return to work...and [hand] examinations after she stopped work revealed no significant findings." (*Id.*). Last, the ALJ found that Plaintiff suffers from no severe mental impairment.

The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id.* at 15). Rather, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of light work, with the following limitations:

> She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk for six hours in an eight-hour workday. She can sit for six

hours in an eight-hour workday.  She is unable to climb ladders, ropes, or scaffolds.  She can reach overhead bilaterally on an occasional basis.  She should avoid all exposure to hazards such as moving machinery and unprotected heights.  She should not perform commercial driving.

(Tr. 15).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy.  (Tr. 17-18).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB.  (Tr. 19).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff first argues that the ALJ erred by finding that Plaintiff would be able to sustain work on a continuous basis, because Plaintiff's physical therapist suggested that Plaintiff's pain level would preclude full-time work.  As a second assertion of error, Plaintiff contends that the ALJ erred in failing to find that Plaintiff's dizziness/lightheadedness, low back pain, and fibromyalgia were "severe" impairments.  Plaintiff argues that the referenced errors caused the ALJ to incorrectly determine Plaintiff's RFC, and that had additional limitations been included, testimony by the vocational expert would have dictated a determination of disability.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for DIB benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are

both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination,

meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

For the convenience of the Court, I will address Plaintiff's assertions of error in reverse order than presented by Plaintiff.

### 1. Failure to Consider Additional "Severe" Impairments

Plaintiff complains that the ALJ erred at Step 2 of the sequential analysis when he failed to find three of her medical conditions or impairments to be "severe." For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. §423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)("an impairment can be considered not severe

only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

Based upon the lack of records, the ALJ concluded that neither Plaintiff's "complaints of lightheadedness and dizziness" nor her alleged diagnosis of fibromyalgia were "medically determinable," (Tr. 14). Although the ALJ did not specifically determine whether Plaintiff's low back pain was "medically determinable," he did not include any of the three conditions (dizziness, fibromyalgia, or low back pain) in his listing of Plaintiff's "severe" impairments.

Errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. §404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone . . . ." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including cervical spine conditions expected to produce pain, and therefore proceeded through the five-step sequential analysis. Even if error, then, the ALJ's failure to consider any of the three conditions as "severe" at Step 2 of the sequential analysis will not necessarily require

reversal or remand. As discussed below, I find no error requiring reversal or remand in this case, because the ALJ adequately considered all of Plaintiff's conditions in determining her RFC.

### a. Dizziness/ Lightheadedness

Plaintiff complains that the ALJ erred in dismissing her complaints of dizziness and lightheadedness on the basis that no medical source has been able to diagnose the source of Plaintiff's complaints. (Tr. 14). Plaintiff points to her evaluation in June 2007 by the Barrett Otology Clinic, which allegedly found bilateral vestibular weakness. However, Plaintiff fails to cite to any particular medical record,[1] and this Court's review of Plaintiff's records confirms that the examining physician found no disturbance of Plaintiff's labyrinthine-vestibular function, notwithstanding her complaints (Tr. 290). Plaintiff notes, correctly, that numerous records reflect consistent complaints of dizziness and lightheadedness, including an extensive history of referrals to multiple specialists in an attempt to diagnosis the basis for Plaintiff's complaints. However, as the ALJ pointed out, doctor upon doctor has been unable to explain or diagnose the cause of Plaintiff's symptoms. (Tr. 13-14, 179).

On February 26, 2007, Plaintiff underwent an EGN test (Tr. 297), which reflected some abnormalities including eye movements "suggestive of a bilateral peripheral vestibular *or* CNS [central nervous system] pathology." (Tr. 291, emphasis added). Plaintiff now argues that, even though she "has not received an official diagnosis" (Doc. 11 at 4), she "suffers from some central nervous system pathology," based upon the results of this test. (Doc. 9 at 11). However, as quoted, the interpretive results of the

---

[1] The only reference to ear "weakness" that the Court located was an insensitivity to temperature upon irrigation. (Tr. 291).

test were only "suggestive" of two different possible diagnoses, and no medical source has ever made *any* diagnosis relating to the EGN or to Plaintiff's complaints of dizziness. Plaintiff was apparently referred to a rheumatologist for work up of fibromyalgia as one possible cause for some of her complaints, but the rheumatologist explicitly refuted any connection between Plaintiff's complaints of dizziness and fibromyalgia. (Tr. 244, 246).

The record reflects that although Plaintiff reports that she does not drive due to dizziness, her symptoms are not necessarily as constant or severe as she alleges. For example, in February 2007 she reported that she experienced constant dizziness on "some days," but that on other days she has more of a general "feeling of imbalance." (Tr. 291). Some records reflect only "intermittent lightheadedness." (*See* Tr. 207, *see also* Tr. 344 (negative tilt table test with recommendation that Plaintiff proceed "with an implantable loop recorder due to the fact that her episodes are *not very frequent*." (emphasis added)). On similar facts where a claimant reports dizzy spells but there is no medical explanation for the same and the claimant's credibility is questioned, courts have affirmed the rejection of dizziness as a non-severe impairment at Step 2. *See Bowen v. Yuckert*, 482 U.S. 137 (1987)(claimant's reported dizzy spells did not constitute severe impairment).

### b. Low Back Pain

As support for her complaints of low back pain (as opposed to cervical pain, which the ALJ determined was severe), Plaintiff points to a lumbar MRI study completed in December 2005 that showed "minimal" disc bulging at L4-5 and mild desiccation and spondylosis (Tr. 185). However, the MRI study and associated X-ray reflect only minor

and mild degenerative changes (Tr. 12-13, 185, 221). Specialists have noted that Plaintiff's lumbar MRI "shows no significant pathology," in contrast to her cervical MRI, which at least showed "a mild herniation." (Tr. 172). Examination records reflect minimal tenderness and negative straight leg raise tests, as well as negative Spurling's test, with good range of motion and little clinical support for her complaints. (See Tr. 208, 216 (reporting "decreased pain" in lumbar and cervical spine)). Plaintiff points to various records to support the consistency of her complaints; however, some of the records cited by Plaintiff do not support her claims but instead reflect improvement in her low back pain (Tr. 217, 245), or else refer to her cervical spine rather than to her low back (Tr. 186). It is clear from this Court's review of the records that Plaintiff has more consistently complained of cervical pain than lumbar pain. Even the physical therapy record on which Plaintiff relies so heavily for her second claim refers to the location of Plaintiff's pain as "cervical/upper thoracic" rather than lower back. (Tr. 177-178).

That is not to say that the record is bereft of any diagnosis relating to low back pain, and in that respect, Plaintiff's contention that the ALJ should have included her low back as a "severe" impairment is fairly debatable. In at least some of the records, examining physicians noted lumbar tenderness and positive trigger points in the back. Plaintiff also received trigger point injections as part of her pain management treatment, although some of those injections were to points in her cervical spine rather than her back. (Tr. 186). She also tried a TENS unit and stimulator, though again, apparently primarily for cervical pain, (Tr. 191, 193), and she was referred to physical therapy for lumbar stabilization (Tr. 221). Noting that she changed position twice during the hearing

before the ALJ, Plaintiff argues that her clinical records and treatment history evidence low back pain that should have been classified as a severe impairment.

To the extent that Plaintiff's low back pain did not cause significant impairment to her work abilities, however, the ALJ committed no error in failing to classify it as a "severe" impairment. Many of the same treatment records reflect that her treatment for back pain "helped her a lot." (Tr. 175; *see also* Tr. 179). For example, on May 16, 2006, Dr. Zaaks stated that Plaintiff "has improved a great deal with regard to her mobility and her level of pain," and, despite continued complaints of dizziness, "has a good prognosis for improving and returning to work." (Tr. 181; *see also* Tr. 182, "mobility is markedly improved," "headaches have disappeared," "almost non-tender in the neck and shoulders" with "no need" to continue with trigger point injections.). On January 15, 2007, Plaintiff reported "some improvement" with physical therapy. (Tr. 216; *see also* Tr. 217 ("significant improvement in her back pain"); Tr. 245 ("describes pain in the lower back that did improve with therapy")). Considering the record as a whole, I conclude that substantial evidence exists to support the ALJ's failure to include Plaintiff's low back pain as a "severe" impairment at Step 2.

### c. Fibromyalgia

The third impairment that Plaintiff argues that the ALJ should have considered to be severe is fibromyalgia. The ALJ held that Plaintiff's fibromyalgia was not a "severe" impairment and was not medically determinable from the records presented, because the condition was mentioned only "in passing in 2007 and 2008," with "no recent mention of it," and "[t]here is no indication how any such diagnosis was reached, and there is no reference to the pressure/tender point evaluation set forth by the American

College of Rheumatologists for diagnosing fibromyalgia." (Tr. 14). As Plaintiff points out, the Sixth Circuit has recognized that fibromyalgia often is a diagnosis of exclusion, and that objective tests may be of little relevance in determining either the existence or severity of that condition. *See, e.g., Preston v. Sec. Of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). However, the ambiguities inherent in the diagnosis does not mean that every suggestion of fibromyalgia requires a conclusion that the condition is "severe" or that it results in disability.

Here, Plaintiff argues that records support a diagnosis of fibromyalgia with positive trigger points "in the classic fibromyalgia distribution" but the records cited by Plaintiff contain only brief references to fibromyalgia. Plaintiff alleges that Drs. Stein and Evans in particular documented her ongoing complaints of pain and stiffness,[2] but provides no citation to any record by either physician, or to any record at all that finds tender points in a pattern consistent with fibromyalgia, or a basis for the diagnosis. Rather, most of the medical references to the relatively general symptom of "trigger points"[3] do not link those points to any particular distribution pattern consistent with fibromyalgia, or to any particular diagnosis. (*See, e.g.*, Tr. 256, 258, noting trigger points in Plaintiff's "upper trapezius muscles" without reference to a cause or diagnosis).

Plaintiff appears to have obtained her diagnosis of fibromyalgia in January 2007, following a referral to Dr. Foad, a rheumatologist. Dr. Foad diagnosed fibromyalgia and minimal osteoarthritis (Tr. 246) but there are no records at all to explain the basis of his

---

[2]Plaintiff's memorandum refers to Drs. Stein and Evans as documenting "Rogers" complaints. The undersigned did not see any reference to Dr. Stein or to Dr. Evans in the medical records, although some medical records contained illegible signatures.

[3]Trigger points are "discrete, focal, hyperirritable spots located a taut band" of muscle fiber, and may be caused by a variety of conditions. Http://www.ncbi.nlm.nih.gov/pubmed/11871683.

fibromyalgia diagnosis. Dr. Foad's records reflect that Plaintiff's lab was "unremarkable" with ANA and SED rates, as well as rheumatoid factor "all within normal limits." (Tr. 244). Plaintiff did not remain in treatment with Dr. Foad. In April 2007 she stated that although she had been diagnosed with fibromyalgia by a rheumatologist (whose name she could not then recall), she was not actively seeing him. (Tr. 249).

As evidence of the severity of her fibromyalgia, Plaintiff relies in part on the February 2007 records of her pain doctor, Dr. Rajbir Minhas, who noted pain on range of motion and positive trigger points. (Tr. 256, 258). However, Dr. Minhas's records also reflect that Plaintiff is "in no acute distress" at any of her appointments. While very briefly referencing fibromyalgia, Dr. Minhas never explains the basis for that diagnosis other than as originating from Plaintiff's own reports.

Other records contain equally fleeting and ambiguous references to fibromyalgia. For example, Dr. Zadikoff references "fibromyalgia" in his notes but does not appear to have conclusively made that diagnosis, instead referring her to rheumatology. (*See* Tr. 225, 1/11/07 note that it is "possible that she has a fibromuscular disorder, possibly a rheumatologic disorder or a condition related to fibromyalgia"; *see also* Tr. 231, 10/30/06 note that "[i]t is possible that she does have fibromyalgia."). In some of the records, it is unclear whether "fibromyalgia" is listed as a "rule out" condition or an actual diagnosis. (*See* Tr. 256, listing diagnoses of "cervical sprain, degenerative disc disease cervical sprain, cervical spondylosis, rule out radiculitis, fibromyalgia, neruopathic pain, headaches"). To the extent that the records reflect an actual diagnosis, the ALJ's determination that Plaintiff's condition was not "severe" is supported by substantial evidence.

In addition to the lack of records supporting the basis for the diagnosis, many records reflect an activity level inconsistent with significant work limitations from fibromyalgia. (*See* Tr. 258, 3/2/07 note stating: "The patient states she has been doing fairly well. She has been exercising"). On March 16, 2007, Plaintiff reported that she is "able to pursue avocational activities" including "raking the yard" despite that activity causing her "some mild to moderate discomfort." (Tr. 257). In April 2007, she reported that she did all of her own household chores, including laundry, that she had been walking to physical therapy 2-3 times per week, and that she would drive infrequently. (Tr. 250). Dr. Willis, the examining physician on March 16, 2007, suggested that Plaintiff could "work without restriction" and advised Plaintiff that if she had a concern about continuing to work, "a functional capacity evaluation would be the most prudent and <u>objective</u> measure of this." (Tr. 257, emphasis original). In a reference to Plaintiff's multiple examinations by so many different physicians, Dr. Willis also advised that "[c]ontinued and multiple independent evaluations in my opinion give little to the clarity of this situation...." (Tr. 257).

Plaintiff asserts that "*Rogers* [*v. Comm'r*, 486 F.3d 234 (6th Cir. 2007)] requires a particular analysis to determine credibility in fibromyalgia cases, which the ALJ failed to follow." (Doc. 9 at 15). Plaintiff stretches the holding of *Rogers* beyond its capacity. While an ALJ must necessarily account for all medical conditions contained in the record when evaluating subjective complaints of pain, the record in this case reflects that the ALJ carefully considered Plaintiff's subjective reports of pain as well as all objective medical evidence and clinical records supporting those complaints.

### d. Limitations

Of course, any error at Step 2 in determining which of Plaintiff's impairments was "severe" will be considered harmless unless the ALJ failed to include relevant limitations. In this case, Plaintiff points to no objective or medical evidence attributing any additional limitations to Plaintiff on the basis of her fibromyalgia, low back pain, or dizziness, which were not included in the RFC determined by the ALJ. Many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). Despite her very extensive medical treatment and consultations with myriad physicians, not a single treating physician ever completed a residual functional capacity form, opined that Plaintiff was disabled, or in any way contradicted the ALJ's determination of Plaintiff's RFC, which included restrictions that arguably encompassed Plaintiff's impairments of low back pain, dizziness, and fibromyalgia. The ALJ restricted Plaintiff to light work, with only occasional overhead reaching and no exposure to heights or machinery, and no commercial driving. (Tr. 15). *Accord, Potts v. Sec. of Health and Human Servs.*, 1 F.3d 1241 (Table, text available at 1993 WL 303363 *6 (6th Cir. Aug. 9, 1993)(affirming ALJ finding that did not consider fibromyositis to be severe or to support additional limitations based on pain, where there was no evidence in the record as to the severity or effects of plaintiff's fibromyositis).

## 2. The ALJ's Determination that Plaintiff Could Sustain Full-Time Employment and Reliance on Vocational Expert Testimony

Plaintiff's second claim also attacks the RFC found by the ALJ. Plaintiff argues that the ALJ erred by finding that Plaintiff could sustain full-time employment, on a "regular and continuing" basis. *See* Soc. Sec. Ruling 96-8p. To support this claim of error, Plaintiff relies heavily upon the opinion of her physical therapist, who opined in July of 2006 that Plaintiff was unable to perform specific work activity due primarily to her pain level. The therapist noted that Plaintiff's "functional activity varies day to day depending on pain, spasms and dizziness, although [she] continues to be very limited." (Tr. 177). Plaintiff argues that her MRI reports and clinical records provide support for her asserted level of pain. Plaintiff notes that her physical therapist saw her for twelve visits, and opined that Plaintiff could not work, could walk only 500 feet with difficulty and 12 steps independently with railing. (Tr. 176). However, the ALJ did not include any walking restrictions or other limitations based upon Plaintiff's asserted level of pain into Plaintiff's RFC.

In addition to her assertion that the ALJ should have adopted walking restrictions and general limitations due to pain suggested by the physical therapist, Plaintiff contends that the ALJ should have included greater specific limitations in her RFC. Based upon her pain level alone, Plaintiff asserts that she requires a sit/stand option (every 15-20 minutes), and the ability to elevate her legs. She also claims that she lacks the ability to concentrate for more than 15-20 minutes, and would miss work at least one day per month. Plaintiff concludes that the ALJ should have determined that she was disabled based upon her complaints of severe pain.

Ultimately the determination of a claimant's RFC, like the determination of disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). There is no doubt that where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). The record reflects that in this case, the ALJ did not specifically discuss the physical therapist's opinions in determining Plaintiff's RFC. However, the physical therapist's opinions were stated on a discharge form that lacked any contemporaneous or objective medical support, and appear to have been based upon Plaintiff's subjective reports of her symptoms at that time. As discussed above, many other records support the RFC determined by the ALJ, including the only residual functional capacity forms that exist in the record, completed by consulting agency doctors. It bears repeating that no medical source offered any opinion in contradiction to that RFC, and no one other than Plaintiff herself has ever opined that she requires a sit/stand option, the ability to elevate her legs, and cannot concentrate for more than 15-20 minutes.

As Plaintiff concedes, a physical therapist is not an acceptable medical source under relevant regulations. See 20 C.F.R. §§404.1513(a) and (d), 415.913(a) and (d). Only an "acceptable medical source," generally a physician or psychologist, can be a treating source entitled to "controlling weight." *See* 20 C.F.R. §§404.1527(a)(2); 404.1527(d), 416.927(a)(2), 416.927(d). On the other hand, SSR 06-03p, 2006 WL 2329939, provides that opinions from medical sources who are not "acceptable" medical sources should still be considered under the factors set forth in 20 C.F.R. §404.1527(d)(2), including "how long the source has known the individual, how

consistent the opinion is with other evidence, and how well the source explains the opinion." *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)(citations omitted).  Even though the ALJ did not discuss the therapist's opinions, the physical therapist's opinions are not consistent with other evidence and contain almost no explanation other than relying upon Plaintiff's subjective reports that her functional abilities vary day-to-day, depending upon her symptoms, including pain, spasms and dizziness (Tr. 177).[4]  Therefore, to the extent that the ALJ should have included a specific reference to the physical therapist's opinions, any error in failing to do so was harmless.

The ALJ focused in great detail on the medical evidence that he found substantially undercut Plaintiff's asserted level of pain and subjective reports of additional symptoms.  In contrast to the report of the physical therapist, Plaintiff reported in December 2006 that she had experienced "significant improvement in her back pain" as a result of physical therapy.  (Tr. 13; *see also* Tr. 217).  In January 2007, Plaintiff had good cervical range of motion and good lumbar range of motion, with full lower limb strength and negative straight leg raises.  (Tr. 13).  Based on these and other records, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with" the RFC found by the ALJ.  (Tr. 16).  In rejecting the additional limitations that Plaintiff continues to assert, including those suggested by the physical therapist, the ALJ explained that Plaintiff's "overall credibility is poor," citing numerous inconsistencies

---

[4]It is unclear how long the therapist knew Plaintiff.  Based upon Plaintiff's own reports that she attended physical therapy 2-3 times per week, the relationship may have spanned no more than a month.

in her testimony.  (Tr. 16).  It is noteworthy that Plaintiff does not directly challenge the ALJ's determination of her credibility in this proceeding.

The ALJ's analysis of Plaintiff's credibility bears strongly on his formulation of her RFC, in terms of his rejection of both the physical therapist's opinions and of Plaintiff's alleged additional limitations due to her asserted pain level.  A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475.  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Due to its relevance to Plaintiff's claims, the ALJ's credibility analysis is quoted at some length:

> [Plaintiff] complained of shooting pain down her legs, yet her only diagnosed problem is with her cervical spine.  There is really no issue with her lumbar spine, as was shown in an MRI and an X-ray.... She claimed initially to be unable to fill out an application due to distractions from pain,

yet she was able to complete at least some of the Administration's forms (Exhibit 3E). Additionally, she stated that her pain is at 10 on a scale of 1-10, with 10 being the highest level of pain.... However, pain of that magnitude would require emergency hospitalization, and the file contains no evidence of such.

The claimant testified that she cannot add or subtract. However, she worked as an accounts payable clerk for about six years...[and] studied accounting....It is implausible that she can do no subtraction or addition.

At the hearing, she seemed intent on avoiding any admission that driving a fork lift involved any sitting. She instead kept avoiding the matter and talking about having to get up and down from it. She complains of severe problems with walking, yet office notes of the Mayfield Clinic repeatedly indicate in their musculoskelatal analysis that there are no problems with her lower extremities (Exhibit 19F). She testified to having severe limitations in her ability to perform chores. She testified at the hearing that she was in too much pain to rake leaves. However, it was noted in March 2007 that she had only mild to moderate discomfort raking her yard (Exhibit 9F, page 3). She was mowing grass in May 2006, although she testified at the hearing that it would take her a week to do it. ...She testified that she cannot drive, yet she stated at Dr. Eggerman's examination that she is able to drive (Exhibit 8F, page 3). She also told Dr. Eggerman that she performed all household chores herself, although she admitted her home was not as clean as it once was ....

The claimant's lack of inpatient hospitalizations due to musculoskelatal problems is not consistent with allegations of disabling musculoskelatal impairments. Additionally, her credibility is not helped by her statement that she takes only Tylenol for pain. ....She stated she was taking no prescription medications, which is not consistent with complaints of disabling musculoskelatal impairments. Even if she were having problems obtaining prescription medications due to insurance reasons, there is no evidence in [the] file that she attempted to obtain prescription medications at little or no cost. Finally, it is significant that there are no medical opinions in [the] file indicating that the claimant cannot work.

(Tr. 16-17).

In sum, the ALJ formulated Plaintiff's RFC and the hypothetical posed to the vocational expert based upon his findings that many of Plaintiff's subjective complaints were not credible, and that only some of her alleged limitations were supported by the record. Generally, a vocational expert's testimony in response to a hypothetical question

accurately portraying the claimant's physical and mental impairments provides substantial evidence in support of the Commissioner's decision that the claimant is not disabled.  *See Davis v. Secretary of Health and Human Services,* 915 F.2d 186, 189 (6th Cir. 1987).

Plaintiff points out that the vocational expert testified on cross-examination by counsel that if additional limitations were included, then full-time employment at any level would be precluded.  (Tr. 50-51).  However, substantial evidence exists in the record to support the functional limitations as found by the ALJ.  Therefore, the failure to include additional limitations does not constitute reversible error.  *See also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

NANCY DRAGAN,                                          Case No. 1:11-cv-44

        Plaintiff,                                     Beckwith, J.
                                                       Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).