UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Nancy Dragan,                    :   Case No. 1:11-cv-044
                                 :
     Plaintiff,                  :
                                 :
vs.                              :
                                 :
Michael J. Astrue, Commissioner  :
of Social Security,              :
                                 :
     Defendant.                  :


**ORDER**

Plaintiff Nancy Dragan has filed objections to the
Magistrate Judge's Report and Recommendation concerning the
Plaintiff's claim for Social Security Disability benefits.  The
Magistrate Judge recommends that this Court affirm the findings
of the Commissioner denying Plaintiff's claim for disability
benefits.  (Doc. 12)  The Report generally concludes that the ALJ
properly evaluated the medical evidence and Plaintiff's reports
of her impairments, and that the decision is supported by
substantial evidence in the record.  For the following reasons,
the Court adopts the Magistrate Judge's recommendations.

**FACTUAL BACKGROUND**

Dragan was born in 1966, and her most recent employment was
as a mail handler with the postal service, a job that required
driving a forklift and lifting as much as 80 pounds on a regular

-1-

basis.  She stopped working in December 2005, and testified that
she receives disability benefits through the postal service.  The
medical records reflect that she began to complain of neck pain
by at least early 2005; a cervical MRI in late 2005 revealed mild
disc herniation at C4-5 and C6-7 and spondylosis, and she
received an epidural injection.  She later told doctors that the
injection worsened her pain.  A lumbar MRI in early January 2006
revealed mild hypertrophy and minimal disc bulge at L4-5 and L5-
S1, but no compressive disc herniation.  She saw Dr. McPherson at
the Mayfield Clinic on January 25, 2006 complaining of neck and
back pain, and pain in her legs and feet.  She also complained of
vertigo and headaches.  Dr. McPherson did not recommend surgery
for her cervical disc problem, and discussed more conservative
treatment options.  On February 28, Dr. McPherson told her she
should think about looking for a job that does not involve
physical labor, and he recommended continuing conservative
treatment for her cervical pain.

     Over the next months, Dragan consulted a number of
physicians and was tried on a variety of medications.  She
received trigger point injections in the cervical and trapezius
areas, and attended physical therapy.  On May 16, 2006, Dr.
Zaacks, a pain management physician, stated that she had improved
a great deal in both mobility and pain level, but she was
continuing to complain of dizziness.  Dr. Zaacks saw no point in

continuing with trigger point injections "as she really doesn't need them and is moving her head and neck very well without any difficulty or restrictions." (Ex. 2F at p. 10) He recommended an ENT evaluation to rule out a middle-ear problem.

Her primary care physician referred her to Riverhills Neurology, Dr. Zadikoff, whom she saw on June 21, 2006. (Ex. 6F) Dragan told Dr. Zadikoff that she has "a constant lightheaded sensation and constant headaches." She also said that her legs collapsed under her the previous December, and she had been unable to walk for a week. She stated that this had happened again both a few weeks and a few days before her appointment. Her physical examination was unremarkable, and Dr. Zadikoff stated it was difficult to explain all of her symptoms on an organic basis. Dr. Zadikoff saw her again in October 2006 and questioned whether she might have fibromyalgia, as she continued to complain of severe pain in her neck, shoulders and lower back. Dr. Zadikoff suggested that she be followed by pain management or possibly rheumatology, as he did not have any good suggestions for further treatment.

Dragan also visited Dr. Miller at Wellington Orthopaedic on November 6, 2006 for an evaluation of her back pain. Dr. Miller placed her into physical therapy. By December 18, Dr. Miller noted that he was "very happy" with Dragan's improvement in her lumbar spine. And on January 15, 2007, he noted that the therapy

-3-

was helping both her lumbar and cervical pain issues, noting that she was in no apparent distress and had good range of motion. (Ex. 4F)

Dr. Zadikoff apparently referred her to Dr. Foad, a rheumatologist, whom she saw for one visit on January 16, 2007. Dr. Foad reviewed her history, noting that Dragan reported she had injured her neck in January 2005 when she fell on ice.  Dr. Foad noted that her neck was painful and she had limited rotational movement, with tenderness in the paraspinal and suprascapular areas.  Some tenderness and pain was present in the lower back, with range of movement limited to 40 degrees.  All other parameters were normal and unremarkable, including her blood chemistries and rheumatoid factor results.  Dr. Foad's letter then stated: "She has fibromyalgia, which is causing most of the pain, and minimal osteoarthritis in the cervical and lumbar spine."  He could not explain the severity of her reported pain by the minimal arthritis, nor her reported dizziness by the fibromyalgia, and stated that there was nothing else he could do for her.

Dragan had ENG testing on February 26, 2007, and reported that she had a dizziness or spinning sensation that varied with the day.  Moving her head seemed to provoke the sensation, and she reported that she falls a great deal.  The test impressions were abnormal, suggesting either a bilateral peripheral

-4-

vestibular or CNS pathology of unknown type.  (Ex. 13F)  And in April 2007, she was seen at Freiberg Spine Institution by Dr. Minhas.  At that time she said she had been out of medications for a few weeks because she lost her prescription coverage and would not be able to afford them.  Dr. Minhas said her review of systems was essentially unchanged, and that she was in no acute distress.  Her physical exam was unremarkable, with some restriction on range of motion, and trigger points in her upper trapezius muscles.  (Ex. 9F)

Dragan was seen by a state examiner for a psychological RFC evaluation on April 11, 2007.  She reported that she does paperwork, drives, shops independently, socializes with family, cooks, does chores, walks for exercise, and manages her own finances.  No psychological impairments were detected, and the examiner thought she was credible in reporting her activities and symptoms.  (Ex. 11F)  And on May 24, 2007, state examiner Dr. Caldwell performed a physical RFC evaluation.  Dr. Caldwell concluded that she could occasionally lift 20 pounds and frequently lift 10 pounds, and she could stand and sit about 6 hours per workday.  She was not limited in ability to push or pull.  Dr. Caldwell noted a February 2007 ENT evaluation was essentially normal, her gait was normal, and she displayed no neurological or muscle strength deficits.  Dragan could never climb ladders, ropes or scaffold, due to her reported dizziness

and pain, and reaching was limited to occasionally.  She must
avoid hazardous machinery, unprotected heights, and could not
commercially drive a vehicle due to her dizziness of unknown
origin.  Dr. Caldwell found that Dragan's symptoms were not
disproportionate to her determinable impairments, and that Dragan
was credible in her reporting.  Dr. Caldwell also noted that
there were no statements from Dragan's treating or examining
sources about her physical capabilities.[1]  (Ex. 12F)

     After Dragan's claim was administratively denied, she
requested an administrative hearing which was held on August 25,
2009.  Dragan testified that she could not read more than a
couple of paragraphs before words became blurry, depending on her
pain.  She has numbness in her hands frequently, and cannot hold
a pen.  She cannot add numbers and instead uses a calculator, and
uses credit cards for all her purchases to avoid counting cash.
She complained of headaches that can last for days or weeks;
herniated discs in her neck and back that cause shooting pains
down her legs, numbness in her hands and legs, and muscle spasms;
fibromyalgia; and dizziness and blackouts or fainting spells.
She said she could not stand or sit for more than 15 or 20
minutes, does not drive, and does not walk alone.  She drops

---

     [1] This could indicate that there was no source material
provided, or that the treating sources did not provide a
statement of her physical capabilities.  Since Dr. Caldwell
specifically noted the ENT test results, the Court presumes it
was the latter.

things frequently, and said she could not lift a gallon of milk.
She spends about half of most days with her feet elevated in a
recliner.  She said she cannot reach overhead or in front of her,
and cannot climb stairs.  She also said she has difficulty riding
in an elevator because she gets light-headed.

     The ALJ found that Dragan has severe impairments of cervical
sprain, degenerative disc disease of the cervical spine, and
cervical spondylosis.  (TR 12)  He discussed her other maladies
and reviewed her medical history and records.  With regard to her
back pain, the ALJ cited the December 2006 report that she was
much improved, had good range of motion, and straight leg raises
were negative.  None of her physicians could point to a cause of
her reported dizziness and lightheadedness, and the ALJ noted
that the "closest the claimant came to a diagnosis" was the
abnormal ENG test in February 2007, but that was only
"suggestive" of some unknown CNS pathology.  He rejected the
diagnosis of fibromyalgia because Dr. Foad did not explain how he
arrived at that diagnosis, and there was no reference to the
evaluative techniques adopted by the American College of
Rheumatologists for diagnosing that syndrome.  The ALJ then
considered Dragan's residual functional capacity, and adopted the
findings of the state reviewer: lifting 20 pounds occasionally,
10 pounds frequently; stand/sit for six hours; no climbing
ladders, ropes or scaffolds; overhead reaching only occasionally;

-7-

no exposure to hazards such as moving machinery and unprotected
heights; and no commercial driving.  As the vocational expert
testified that sufficient jobs were available within these
restrictions, the ALJ denied Dragan's claim for benefits. (TR 15)

The Magistrate Judge recommends that the ALJ's decision be
affirmed, rejecting Dragan's argument that the ALJ failed to
consider her dizziness, back pain, and fibromyalgia as "severe
impairments" at Step Two of the sequential analysis.  The
Magistrate Judge noted that her complaints have never been
medically determined, and that the dizzy spells are not
documented to be as constant or severe as she described in her
hearing testimony.  In the absence of any medical explanation,
and combined with the ALJ's poor assessment of her overall
credibility, the ALJ properly rejected these complaints as being
"severe" impairments.  Regarding her back pain, all of the
objective tests document only mild degenerative changes with no
nerve impingement.  While there were occasions where physical
exams documented lumbar tenderness and positive trigger points,
the course of physical therapy prescribed in late 2006 greatly
improved her symptoms and her pain.  Since that time, the records
do not reflect ongoing complaints about back pain, but are
focused on her cervical issues.  Finally, the Magistrate Judge
found that fibromyalgia was mentioned almost in passing on a few
of her records.  Dr. Foad concluded that she has fibromyalgia,

-8-

but his conclusion is unsupported by any explanation or documented trigger point analysis. Dr. Foad also found that her lab results were completely unremarkable and her rheumatoid factor within normal limits. Based on the medical evidence, the Magistrate Judge agreed with the ALJ's rejection of fibromyalgia as a "severe" impairment.

The Magistrate Judge also concluded that the ALJ did not err in formulating his RFC, rejecting Dragan's contention that her severe pain and inability to sit for more than 15 minutes precludes her from gainful employment. Dragan relies on a July 2006 discharge summary from a physical therapist (Ex. 2F, TR 176-177) which noted that Dragan was "unable to perform specific work activity secondary to pain or limitation," could not walk more than 500 feet without difficulty, or climb more than 12 steps without assistance. But the Magistrate Judge observed that a physical therapist does not fall within the regulatory definitions of "acceptable medical source" whose opinion would be entitled to controlling weight. And in any event, her opinion is not consistent with the weight of the evidence, especially records documenting her great improvement after a different course of physical therapy in January 2007.

The ALJ made extensive findings about the manner in which Dragan's subjective description of her symptoms, especially her pain and her lack of almost all mobility, conflicted with her own

reports to physicians and the documented evaluations.  The ALJ found Dragan to be less than credible, and concluded that her allegations of disabling impairments were not consistent with the medical evidence.  He also noted that none of Dragan's treating physicians concluded that she was precluded from working by her impairments.  (TR 16-17)

## DISCUSSION

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision.  "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion."  LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury.  Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981).  The substantial-evidence standard "... presupposes that

there is a zone of choice within which the decisionmakers can go
either way, without interference by the courts.  An
administrative decision is not subject to reversal merely because
substantial evidence would have supported an opposite decision."
Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker
v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).  Moreover, the
ALJ need not accept a medical opinion that a claimant is
"disabled" (and therefore unemployable) as that determination
rests with the Commissioner under 20 C.F.R. § 404.1527(e)(1).

     The district court reviews de novo a Magistrate Judge's
report and  recommendation regarding Social Security benefits
claims.  Ivy v. Secretary of Health & Human Serv., 976 F.2d 288,
289-90 (6th Cir. 1992).

     Dragan objects to the ALJ's failure to treat her low back
pain, dizziness, and fibromyalgia as severe impairments.  She
contends that the records amply support her claim that these
conditions are severe within the meaning of the regulations.  A
"severe" impairment (or combination of impairments) is one that
significantly limits the claimant's ability to perform basic work
activities.  20 C.F.R. § 404.1520(c).  The impairment must also
be expected to last for a continuous period of at least 12
months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509.

     With regard to back pain, Dragan's first visit with Dr.
Zadikoff noted that she was referred for neck pain and "some back

-11-

pain." By October 30, she was complaining of lower back pain as well as neck pain that made it difficult to move. On November 6, she reported to Dr. Miller that her primary complaint was back pain and she had a history of neck pain. Yet as noted above, by December 18 Dr. Miller found that Dragan had made substantial progress in dealing with her back pain, and he was very happy with her lumbar improvement. There is no clinical evidence of any lumbar disc nerve impingement, and the references to degenerative disc disease and spondylosis do not compel the conclusion that the ALJ erred in finding that her back pain was not a "severe" impairment.

The same conclusion applies to Dragan's complaints of dizziness and light-headedness. Dr. Zaacks noted that on May 16, 2006, Dragan's headaches had largely disappeared, and that the trigger point injections and traction she received had improved her light-headedness, but that it was beginning to come back. Dr. Zaacks referred her for an ENT evaluation to rule out an inner ear problem, as he could not explain her reported symptoms, but he discontinued the trigger point injections because she was able to move her head and neck without any difficulty or restriction. (Ex. 2F) The ENT tests were essentially unremarkable. The February 2007 ENG test "suggested" some unspecified CNS pathology. Dragan contends that the ALJ ignored this test, the fact of her vestibular rehabilitation in the

-12-

summer of 2007, and the numerous complaints she made to her
doctors.

The disability statute requires a finding of a "medically
determinable" impairment that precludes gainful employment.
Other than a suggestion of some unspecified pathology, none of
Dragan's treating physicians have concluded that her reported
dizziness or light-headedness are "medically determinable," and
none have opined that those reported symptoms restrict her
ability to work.  While the records certainly document her
reported complaints, her subjective reports do not suffice to
establish a "medically determinable" impairment on this basis.
And when a claimant's credibility in reporting her symptoms and
limitations is questioned, as the ALJ found, subjective reports
are insufficient to carry claimant's burden of proof on this
issue.

Finally, with regard to Dragan's assertion of fibromyalgia,
Dr. Foad is the only physician who diagnosed this condition.  And
his "diagnosis" was essentially unexplained.  He noted that her
neck was limited in movement, and there was tenderness in her
cervical and supracapular areas.  Some tenderness and pain was
noted in her lower back, with some limited flexion, but other
symptoms were absent and her chemistry results were normal.
After describing her spinal x-rays, Dr. Foad simply stated that
"she has fibromyalgia," but also stated that condition could not

-13-

explain her reported dizziness and lightheaded feeling.  (Ex. 7F)

According to a recent Merck Manual entry, fibromyalgia "is a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep.  Diagnosis is clinical.  Treatment includes exercise, local heat, stress management, drugs to improve sleep, and analgesics." Diagnosis is based on pain caused by palpation of specific tender points, classically as more than 11 of 18 prescribed sites.   Merck Manual Online, Musculoskeletal and Connective Tissue Disorders, http://www.merck.com (last visited February 15, 2012).

The Sixth Circuit has noted that, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ...". Rogers v. Commissioner, 486 F.3d 234, 243-44 (6th Cir. 2007).  See also Preston v. Sec'y of Health & Human Services, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity).  In Rogers, the claimant's treating physicians had documented consistent diagnoses of fibromyalgia, and had specifically opined that the effects of the disease limited the claimant's physical abilities.

-14-

The Sixth Circuit reversed the Commissioner's denial of benefits because the ALJ's failure to treat fibromyalgia as a severe impairment had improperly influenced the ALJ's consideration of the treating physician's opinion about the effects of that disease on the claimant's functional capacity.  Rogers, 486 F.3d at 243.  The court noted that the ALJ failed to address the consistent diagnosis of fibromyalgia in the clinical record, and did not apply the standard diagnostic criteria.  The ALJ had instead relied on the opinions of non-examining disability reviewers who were not specialized in rheumatology.

In this case, the only physician who concluded that Dragan actually has fibromyalgia is Dr. Foad, and he does not discuss the reasons he reached that opinion.[2]  Moreover, Dr. Foad's letter indicates that Dragan denied that therapy had helped her pain; yet Dr. Zaacks specifically found that in May 2006 she was "almost non-tender" in the neck and shoulders after receiving therapy.  And in April 2007, Dragan told Dr. Minhas that "medications and treatment have helped improve the quality of life and helped in psycho-social functioning."

The Social Security regulations governing treating physician opinions provide that, "... if the opinion of the treating physician as to the nature **and severity** of a claimant's condition

---

[2] Dragan's objections refer to records submitted by Dr. Stein (Doc. 16 at 4), but the Court cannot locate any records from Dr. Stein.

is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record," it will be given controlling weight. <u>Rogers</u>, 486 F.3d at 242 (internal citation and quotations omitted; emphasis added). If the Commissioner finds that a treating physician's opinion is inconsistent with or unsupported by the record, the following factors should be discussed in determining the weight that should be accorded that opinion: (1) the length of the treatment relationship and frequency of contact; (2) the nature and extent of that relationship; (3) the evidence provided to support the opinion; (4) consistency between the opinion and the entire record; (5) the treating physician's specialty; and (6) any other relevant factors such as the extent to which the medical source is familiar with other information in a claimant's case record. See 20 C.F.R. § 416.927(d)(2)-(6). Other than Dr. Foad's specialty, all of the other pertinent factors weigh against accepting his unexplained conclusion that Dragan has fibromyalgia. And as the Magistrate Judge concluded, many of the medical records reflect that Dragan's activity level was inconsistent with disabling fibromyalgia, and her subjective complaints of pain presented in her hearing testimony conflicted with her documented reports to her physicians. The Court agrees that the Commissioner did not err in failing to treat fibromyalgia as a "severe" impairment.

-16-

Dragan also objects to the ALJ's formulation of her
functional capacity, essentially finding her capable of
restricted light work.  She again relies on the July 2006
physical therapy discharge notes already discussed above, and
states that opinion combined with her cervical impairments does
not permit her to work.  She asserts that she is "more than
credible" in describing her symptoms and her limitations.  She
contends that the ALJ should have accepted her testimony that she
cannot sit or stand for more than 15 minutes, a condition which
the vocational expert testified would render her unemployable.

While the physical therapist is not considered an
"acceptable medical source" under pertinent regulations, the
Commissioner should consider information and opinions from other
sources in formulating a claimant's residual functional capacity.
While the ALJ did not expressly address the physical therapist's
discharge summary, this therapist does not explain how these
functional measures were obtained.  Many of them, including
Dragan's reports of moderate to severe pain, seems based on her
subjective feedback.  And it is not clear how many visits Dragan
had with this therapist.  Even more importantly, the record
documents that a subsequent course of physical therapy helped her
a great deal, as Dr. Miller reported.

The ALJ also made detailed findings about the credibility of
Dragan's hearing testimony, and the Magistrate Judge quotes this

-17-

entire section of the opinion (see Doc. 12 at pp. 18-19).  It is
clear that the ALJ does not have to accept a claimant's
subjective complaints, and that the ALJ's credibility assessment
is accorded "great weight and deference, particularly since an
ALJ is charged with the duty of observing a witness's demeanor
and credibility."  Walters v. Commissioner of Soc. Sec., 127 F.3d
525, 531 (6th Cir. 1997).  The ALJ's observations include the
fact that Dragan testified she cannot add or subtract, yet she
worked as an accounts payable clerk; that she "seemed intent on
avoiding any admission that driving a fork lift involved any
sitting" (driving a fork lift was part of her postal service
job); that she complained of severe walking problems, yet
Mayfield Clinic's evaluations found no problem with her lower
extremities; and that she complained of suffering pain at a Level
10 (out of 10), yet also said she was taking over-the-counter
Tylenol for pain.  And the ALJ again stressed that none of
Dragan's treating physicians submitted an opinion that she cannot
work, or a residual function evaluation that her ability to work
was limited in some fashion.

    Dragan argues that the ALJ essentially ignored the objective
evidence of her impairments when he improperly assessed her
credibility.  The Court has already concluded that the objective
evidence simply does not support Dragan's complaints of totally
disabling pain.  And this Court will not reject the ALJ's

credibility assessment simply because Dragan believes it was incorrect.

### CONCLUSION

For all of these reasons, the Plaintiff's objections to the Magistrate Judge's Report and Recommendation are overruled.  The Court hereby adopts the Magistrate Judge's Report and Recommendation in full.  The Court affirms the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: February 28, 2012        s/Sandra S. Beckwith
                                Sandra S. Beckwith
                                Senior United States District Judge

-19-